UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TANIA ZUBACK, | * |
| | * |
| Plaintiff | * |
| | *   NO. _____ |
| v. | * |
| | *   JURY DEMAND |
| FEDEX GROUND PACKAGE | * |
| SYSTEM, INC. | * |
| | * |
| Defendant | * |

COMPLAINT

Comes Plaintiff and sues Defendant for damages and other relief, showing the Court as follows:

I. JURISDICTION

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to 42 U.S.C. §12101, *et seq.*, and 29 U.S.C. §2601, *et seq.*, to secure protection and redress for the deprivation of rights guaranteed by the Americans with Disabilities Act, as amended, (the "ADA") and by the Family Medical Leave Act, as amended, (the "FMLA") against discrimination and retaliation in employment.

II. NATURE OF PROCEEDING

2. This is a proceeding for back pay and benefits due Plaintiff; for injunctive relief requiring Defendant's re-employment of Plaintiff at her former position or front pay in lieu of reinstatement; for compensatory damages; punitive damages; costs, prejudgment interest and attorney fees; and for such additional relief as may be necessary to effectuate the purposes of the ADA and the FMLA.

III.  THE PARTIES

3. At all times material to this complaint, Plaintiff Tania Zuback was a resident of Hixson, Hamilton County, Tennessee.

4. Defendant FedEx Ground Package System, Inc., is a Delaware corporation and operates a business location at 3021 Alton Park Boulevard, Chattanooga, Hamilton County, Tennessee.

5. Plaintiff was employed at the Chattanooga location, and the matters giving rise to this complaint occurred in Chattanooga, Hamilton County, Tennessee.

6. This Honorable Court has jurisdiction over the parties and the subject matter of this lawsuit pursuant to the ADA and the FMLA.

IV.  FACTUAL BASIS

7. Plaintiff became employed by Defendant on a part-time basis in November 2003. Plaintiff became a full-time employee in 2007. At the time of her termination, Plaintiff was a Senior Operations Administrator performing office duties.

8. Plaintiff's job duties as Senior Operations Administrator included documenting records for routes and deliveries primarily for work performed the day before, working on the previous day's schedule to make sure that mileage and hours turned in by drivers was correct, the hours reported by the drivers was correct, preparing end of the day close for the previous day, preparing a worksheet for the previous day, finding correct addresses for packages with wrong addresses or P. O. boxes, recording mileage for the big trucks, calling and setting "date certain deliveries", and giving directions to the drivers.

9. Plaintiff's original work schedule as Senior Operations Administrator was approximately 9:00 a.m. to 5:30 p.m. Plaintiff's work was best performed during daylight hours.

10. Plaintiff was a good employee and received promotions and excellent evaluations throughout her employment until 2017.

11. Plaintiff's direct supervisor was Tommy Wheeler.

12. Plaintiff has a vision disability which makes it difficult to see at dusk or during the nighttime hours.

13. In 2017, Plaintiff notified Defendant of her disability. Defendant then began to treat Plaintiff differently.

14. Plaintiff's original schedule allowed her to leave work and drive home safely before it became too dark for Plaintiff to safely see.

15. Plaintiff was able to perform her job duties within the original schedule. Plaintiff never had difficulty completing her duties in that schedule, and no one ever complained that Plaintiff was not getting her work done.

16. Plaintiff had been under the supervision of a doctor about her eye problems for some time. By 2017, Plaintiff's eye problems had worsened considerably.

17. Plaintiff gave Defendant verbal notification, as well as a note from her attending physician, that Plaintiff was unable to work in the dusk or at night due to her eyesight.

18. Plaintiff continued her original schedule for over a year.

19. In early 2019, Defendant told Plaintiff that it wanted to change her work hours so that she would get off from work at 7:00 or 7:30 p.m. Plaintiff told Defendant that she continued to be unable to drive at dusk or dark and could not work the later hours because she would be unable to see to safely drive home.

20. There was no need for Plaintiff to work a different schedule. Plaintiff could, and did, complete all her job duties under the original schedule.

21. Defendant insisted that Plaintiff work the new schedule. Defendant did not inform Plaintiff of her FMLA rights and did not engage in a good faith attempt to find an accommodation for Plaintiff's disability. Instead, Defendant began to retaliate against Plaintiff for her medical problem.

22. Plaintiff attempted to resolve the scheduling issue with Defendant. When Defendant continued to insist that Plaintiff work the new schedule, Plaintiff provided a note from her doctor dated July 10, 2019 that stated, "Ms. Zuback has difficulty seeing at nighttime. She is advised to avoid driving at dusk or nighttime."

23. Instead of allowing Plaintiff to continue on the original schedule or working with Plaintiff to arrange an appropriate schedule, Mr. Wheeler continued to insist that Plaintiff work the new schedule. Mr. Wheeler gave Plaintiff a letter dated September 30, 2019, stating that she needed to start between "10:30-11:00 AM, and your ending time will be around 7:00 PM."

24. Plaintiff reminded Defendant of her disability and continued to work her original schedule.

25. On October 29, 2019, Mr. Wheeler wrote to Plaintiff again and stated that she needed to adjust her schedule to come in "between Noon and 1:00 PM, and your ending time will be around 7:00 PM."

26. Again, Plaintiff told Defendant that she was unable to work until 7:00 or 7:30 p.m. because of her disability. Plaintiff continued to fulfill her duties pursuant to the original schedule.

27. Defendant began writing up Plaintiff when she came in "early" (what was her original start time) and left "late" (what was her original end of workday).

28. Each time that Plaintiff was given a write up, Defendant insisted on meeting with her. Defendant did not use these meetings to discuss Plaintiff's rights with her or to engage in good

faith discussion of how to arrange Plaintiff's schedule. Nor were these meetings to address any issues with Plaintiff's efficiency or work quality. Rather, Defendant used these meetings to berate Plaintiff for refusing to work after 5:30 p.m.

29. Plaintiff asked Defendant that if it were not satisfied with her doctor's note or needed more information, then to schedule and send her to a doctor of Defendant's choice for an eye examination. Defendant declined to participate in this suggestion.

30. In response to Defendant's actions, Plaintiff filed a charge with the EEOC. Defendant was upset about the charge and continued to write up Plaintiff.

31. On November 22, 2019, Defendant's HR Business Partner again wrote to Plaintiff and told her that she must report to work "between noon and 1:00 p.m., and your end time is around 7:00 p.m."

32. Defendant assigned Plaintiff new work hours that Defendant knew she would be unable to work because of her disability.

33. Defendant insisted that Plaintiff work the new hours in spite of her disability.

34. Defendant refused to in good faith attempt to find a schedule that Plaintiff could work with her disability.

35. Defendant never informed Plaintiff of her rights, but rather insisted that the new schedule was necessary.

36. Defendant wrote Plaintiff up every time she was late and met with her multiple times to berate her for working under her prior schedule.

37. Plaintiff was terminated December 27, 2019.

38. Since Plaintiff was terminated, no one has been assigned to the noon to 7:00 p.m. schedule that Defendant had attempted to force Plaintiff to work. No one needed to work such a schedule. There are no job duties that can only be completed under that schedule.

39. Defendant's actions were intended to force Plaintiff to quit her job. When Plaintiff did not quit her job, Defendant continued to write Plaintiff up so that they could terminate her ostensibly for point accumulation.

40. Defendant terminated Plaintiff because of her disability, because she opposed Defendant's intentional violations of the ADA, and because she had filed a charge with the EEOC.

V. CLAIMS

### CLAIM 1: ADA

41. Defendant was aware of Plaintiff's disability.

42. Defendant discriminated against Plaintiff on the basis of her disability in the scheduling, terms, and conditions of her employment in violation of 42 U.S.C. §12101, *et seq*.

43. Defendant discriminated against Plaintiff on the basis of her disability by failing to engage in good faith in an interactive discussion regarding her ability to perform the essential functions of her job in violation of 42 U.S.C. §12101, *et seq*.

44. Defendant discriminated against Plaintiff by terminating her employment because of her disability in violation of 42 U.S.C. §12101, *et seq*.

45. Defendant is responsible for the acts of its supervisory employees.

### CLAIM 2: FMLA

46. Defendant was aware of Plaintiff's disability, which is also a serious medical condition.

47. Defendant discriminated against Plaintiff by intentionally moving her to a shift it knew she would not be able to work in an attempt to force her to quit.

48. Defendant interfered with Plaintiff's rights by failing to inform her of her rights under the FMLA in violation of 29 U.S.C. §2601, *et seq.*

49. Defendant interfered with Plaintiff's rights by refusing to permit her to take leave or intermittent leave in light of her serious medical condition in violation of 29 U.S.C. §2601, *et seq.*

50. Defendant interfered with Plaintiff's rights by terminating her for attempting to take leave or intermittent leave in light of her serious medical condition in violation of 29 U.S.C. §2601, *et seq.*

51. Defendant retaliated against Plaintiff for attempting to exercise her rights by terminating her in violation of 29 U.S.C. §2601, *et seq.*

52. Defendant is responsible for the acts of its supervisory employees.

## VI. JURISDICTIONAL PREREQUISITE

53. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, 494-2019-02316. Plaintiff has received her Notice of Right to Sue, which is attached.

54. Plaintiff filed a separate charge of retaliation with the Equal Employment Opportunity Commission, 494-2020-00720. Plaintiff has received her Right to Sue on this charge, which is attached.

## VII. DAMAGES

55. Plaintiff has suffered because of Defendant's wrongful acts in refusing to accommodate her disability and/or grant her request for leave, retaliating against Plaintiff, and terminating Plaintiff.

56. Plaintiff lost and will continue to lose salary, opportunities and advancement, and various employee benefits, which she would have earned had she been allowed to continue in her position and employment with Defendant.

57. Plaintiff has suffered great mental anguish resulting from the embarrassment and humiliation that she experienced because of Defendant's actions.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That service be issued and properly served upon Defendant and Defendant be required to answer within the time prescribed by law;

b. That upon the hearing of this cause, Plaintiff be awarded judgment for damages for lost wages and the value of all employment benefits which she has lost from the date of Defendant's discriminatory action;

c. That the Court issue an injunction requiring Defendant to re-employ Plaintiff at her former position with all employment rights and benefits to which she would have been entitled, and without harassment or illegal conditions imposed on her job, or, in the alternative, front pay and benefits in lieu of reinstatement;

d. That Plaintiff be awarded additional compensatory damages for humiliation and embarrassment and emotional distress, pursuant to 42 U.S.C. §12101, *et seq*.;

e. That Plaintiff be awarded liquidated damages pursuant to 29 U.S.C. §2617;

f. That Plaintiff be awarded attorney fees and such other and further relief as the Court deems proper pursuant to 42 U.S.C. §12101, *et seq.,* and 29 U.S.C. §2601, *et seq.*; and

g. Plaintiff demands a jury to try all claims and issues triable by a jury.

BURNETTE, DOBSON & PINCHAK

BY:     s/ *Frank P. Pinchak*
Frank P. Pinchak, BPR #002094
Harry F. Burnette, BPR #004803
Madison Hahn, BPR #037860
*Attorneys for Plaintiff*
711 Cherry Street
Chattanooga, TN 37402
Phone: (423) 266-2121
Fax: (423) 266-3324
fpinchak@bdplawfirm.com
hburnette@bdplawfirm.com
mhahn@bdplawfirm.com